**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | | |
|---|---|---|
| **D.L.R.,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **Case No. 5:22-cv-18-CHW** |
| | : | |
| **COMMISSIONER OF SOCIAL SECURITY,** | : | **Social Security Appeal** |
| | : | |
| **Defendant.** | : | |
| | : | |

## ORDER

This is a review pursuant to 42 U.S.C. § 405(g) of a final decision of the Commissioner of the Social Security Administration denying Plaintiff D.L.R.'s application for disability benefits. The parties consented to have a United States Magistrate Judge conduct proceedings in this case, and as a result, any appeal from this judgment may be taken directly to the Eleventh Circuit Court of Appeals. Because the ALJ adequately evaluated the opinions of Dr. Babatunde Ajibola and Dr. Abul Hasan, and because substantial evidence supports the ALJ's residual functional capacity or RFC finding, the Commissioner's decision is **AFFIRMED**.

## BACKGROUND

Plaintiff applied for Title II disability insurance benefits in June 2019, alleging disability beginning in October 2015 due to unspecified arthropathies, obesity, and a hyper-alignment disorder. (R. 75). After Plaintiff's application was denied initially and on reconsideration at the state-agency level of review (R. 90, 105), Plaintiff sought further review before an Administrative Law Judge or ALJ.

The presiding ALJ held a hearing in June 2021, whereupon Plaintiff argued that he was disabled due to a right-side shoulder impairment, longstanding problems with bilateral foot

tenosynovitis, obesity, and concentration problems caused by pain. (R. 41–42, 50). Plaintiff further testified that he had retired from his job as a military supply specialist in 2015 (R. 44–45), and that his subsequent efforts to find other employment were not successful. Plaintiff testified that he needed to elevate his feet and legs to manage his pain and swelling (R. 63), but Plaintiff acknowledged that his daily activities included caring for two dogs and a cat (R. 51), along with horseback riding. (R. 53).

In August 2021, the ALJ issued an opinion finding that Plaintiff could adjust to the requirements of a modified range of light work. (R. 18). In reaching this conclusion, the ALJ discounted the opinions of two physicians, Dr. Abul Hasan, a VA primary care physician, and Dr. Babatunde Ajibola, a family practitioner. Thereafter, Plaintiff unsuccessfully sought additional agency review before the Appeals Council. (R. 1). Before this Court, Plaintiff now argues that the ALJ erred by discounting the opinions of Dr. Hasan and Dr. Ajibola. Because the ALJ properly evaluated these physicians' opinions under 20 C.F.R. § 404.1520c(c), and because substantial evidence supports the ALJ's decision to discount these physicians' opinions, the Commissioner's final decision is affirmed.

## STANDARD OF REVIEW

Judicial review of a decision of the Commissioner of Social Security is limited to a determination of whether that decision is supported by substantial evidence, as well as whether the Commissioner applied the correct legal standards. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). "Substantial evidence" is defined as "more than a scintilla," and as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* The Eleventh Circuit has explained that reviewing courts may not decide the facts anew, reweigh the evidence, or substitute their judgment for that of the Commissioner. *Id.* Rather, if the

2

Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the evidence preponderates against it.

## EVALUATION OF DISABILITY

Social Security claimants are "disabled" if they are unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations outline a five-step sequential evaluation process for determining whether a claimant is disabled: "(1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience." *Winschel*, 631 F.3d at 1178 (11th Cir. 2011) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v); 416.920(a)(4)(i)-(v)).

## MEDICAL RECORD

The available medical record begins in February 2015, when Plaintiff underwent a bunionectomy, nerve block, and fluoroscopy procedure on his right foot. (R. 720). Plaintiff was then serving on active-duty desk work in the military. (R. 724). In April 2015, Plaintiff sought care for a sprained ankle. (R. 715). Thereafter, in July 2015, Plaintiff had another surgical procedure involving a heel spur resection, a release of the medical plantar nerve, and additional nerve blocks. (R. 708). Subsequent treatment notes from the Foot and Ankle Center of Middle GA indicate that

Plaintiff continued to report symptoms of tingling or pain, but x-rays revealed no fractures and good bone density, and the record indicates that Plaintiff's symptoms were managed with Celebrex, compression stockings, arch support, and Epsom salts. (R. 695–701).

Contemporaneously, medical images revealed a torn rotator cuff in January 2016 (R. 398), with the result that in February 2016 Plaintiff underwent surgery on his right shoulder, consisting of (1) a subacromial decompression, (2) an arthroscopic Mumford procedure, and (3) a rotator cuff debridement procedure. (R. 396). Thereafter, Plaintiff's treatment with therapeutic exercises and ibuprofen produced some success. (R. 329). For example, Plaintiff's self-reports of pain on the Penn Shoulder Score decreased from around 75% in February 2016 (R. 390–91), to around 50% in March 2016 (R. 361–62). Similarly, Plaintiff rated his pain at an intensity level of 3 in March 2016 (R. 331), and then a level of 2 in April 2016. (R. 315). Plaintiff's medical records for the remainder of 2016 and into mid-2017 show an emphasis on treatment for unrelated conditions, including hemorrhoids (R. 416, 423), tinnitus (R. 402), hypothyroidism and hypogonadism, for which Plaintiff treated with Synthroid and Fortesta (R. 494), and obesity, for which Plaintiff treated with phentermine. (R. 494).

Also in March 2016, a venous ultrasound study revealed signs of venous reflux but no evidence of thrombosis. (R. 690). Based on Plaintiff's continued report of pain, Plaintiff had a nerve block, steroid injection, and aspiration procedure on his right ankle in November 2016. (R. 684–85). Records from the Foot and Ankle Center of Middle GA from October and December 2017 show signs of improvement, with Plaintiff displaying "normal" muscle strength" and "[n]o antalgic gain," and reporting "minimal pain." (R. 668, 670).

From 2017 through 2019, Plaintiff treated with Dr. Barry Johns for hypothyroidism and hypogonadism. (Ex. 4F). Dr. Johns's records indicate that Plaintiff's hypogonadism was "mild,"

"stable and nonprogressive," and managed with Fortesta. (R. 459, 728). Additionally, Dr. Johns's notes repeatedly indicate that Plaintiff was "[n]egative for arthralgias, back pain, and myalgias." (R. 454, 464, 468). Dr. Johns's records further indicate that Plaintiff's hypothyroidism was managed with Synthroid, although Plaintiff suffered from the symptom of weight gain. (R. 464).

Contemporaneously, Plaintiff treated with Dr. Fredrick Oni at Genesis Gastroenterology for intestinal malabsorption associated with gastritis or gastro-esophageal reflux. (R. 526, 529). Dr. Oni's records indicate that Plaintiff's reflux was "stable; controlled" by treatment with the medication omeprazole (R. 532, 535, 538, 541 547), and that Plaintiff's intestinal malabsorption was "responding to creon36," (R. 547), or the medication Viberzi which "really help[ed]." (R. 534).

At an April 2018 appointment at the Foot and Ankle Center of Middle GA, Plaintiff reported increased bilateral foot and ankle pain associated with "doing too much," and specifically with "doing some fishing and hanging out with his buddies," along with "trying to transport 27 horses from Texas into Georgia." (R. 659). In June 2018, Plaintiff reported an ankle sprain suffered when Plaintiff was "riding some horses and jumped off the wrong way." (R. 657). By September 2018, Plaintiff reported that he had "discontinued his cowboy ranching" with subsequent improvements in his pain and swelling. (R. 655). A record from November 2018, however, indicates that Plaintiff had gone "out horseback riding the other day." (R. 653).

Beginning in February 2019, Plaintiff reported renewed pain his right shoulder rated as "2/10" (R. 409), possibly associated with an earlier horseback riding accident. (R. 868). Dr. Jonathan Harris performed a second surgical procedure on February 13, 2019, which included another Mumford procedure and an acromioclavicular joint reconstruction. (R. 412, 789). Thereafter, Plaintiff attended occupational therapy at Middle Georgia Orthopaedic Surgery & Sports Medicine beginning in March 2019 (R. 995–96), where Plaintiff quickly reported that he

was able to "wash and put away my dishes into the overhead cabinets with less pain" (R. 977) and to "toss the ball around with my dog." (R. 964). At a May 2019 follow-up appointment, Dr. Harris noted that Plaintiff "denie[d] neck pain, back pain and [the] use of [a] cane or crutch" for assistance with walking. (R. 950).

In October 2020, Plaintiff reported to the office of Dr. Babatunde Ajibola, a primary care physician, "to get paper work filled for social security." (R. 1231). Dr. Ajibola acknowledged that "we don't have med records" relating to Plaintiff's prior foot surgeries. (R. 1231). Additionally, although Dr. Ajibola's notes indicate he may have treated Plaintiff in 2018, those records are not available to the Court. Dr. Ajibola diagnosed Plaintiff with metatarsalgia of both feet, noted that Plaintiff ambulated with a cane, and instructed Plaintiff to continue treatment with his "ortho and foot Dr." (R. 1218). While Dr. Ajibola's records indicate that Plaintiff generally managed his metatarsalgia condition with Celebrex, at least one of Dr. Ajibola's reports indicate that Plaintiff was "not taking Celebrex and ibuprofen." (R. 1214). Dr. Ajibola also detected elevated TSH or thyroid-stimulating hormone levels on testing (R. 1217), leading to a reduction in Plaintiff's Synthroid dosage. (R. 1210).

Plaintiff also presented, in October 2020, for x-ray studies of his lumbar spine, both feet, and right knee as requested by Dr. Abul Hasan, a VA primary care physician. (R. 1062–67). These studies revealed moderate degenerate changes in the first metatarsophalangeal joint of the right foot (R. 1064), along with mild disc degeneration at the L5-S1 vertebral site. (R. 1067).

The last remaining medical records relate to Plaintiff's continued treatment at the Foot and Ankle Center of Middle GA through February 2021, where Plaintiff reported that he was "much improved over the last few months with decreased pain and discomfort." (R. 1187).

6

## DISABILITY EVALUATION IN PLAINTIFF'S CASE

Following the five-step sequential evaluation process, the reviewing ALJ made the following findings in Plaintiff's case. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity from October 10, 2015, the alleged onset date, through December 31, 2020, the date last insured. (R. 17). At step two, the ALJ found that Plaintiff suffered from the following severe impairments: "obesity; right shoulder dislocation status post reconstruction; tenosynovitis of the right ankle; hallux valgus; [degenerative] changes of the right foot; lumbar degenerative changes; and history of right knee arthroplasty." (R. 17).

At step three, the ALJ found that Plaintiff's impairments did not meet or equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 18). Therefore, the ALJ assessed Plaintiff's RFC and found that through her date last insured, Plaintiff could perform light work with the following limitations:

- "He should never climb ladders, ropes or scaffolds, but he can occasionally climb ramps and stairs and he can occasionally balance, stoop, kneel, crouch, and crawl;

- He can occasionally reach overhead with his right upper extremity and he can frequently reach in all other directions; He can frequently handle, finger, and feel; and

- He should avoid concentrated exposure to hazards such as moving machinery and unprotected heights.

(R. 18)

Based on this RFC finding, the ALJ determined at step four that Plaintiff was capable of performing his past relevant work as a stock control clerk. (R. 27). Additionally, the ALJ also made alternative step five findings, concluding that Plaintiff could adjust to other jobs such as cashier, office helper, and sorter. (R. 28). Accordingly, based on both his step four and step five findings, the ALJ ruled that Plaintiff was not disabled within the meaning of the Social Security Act.

# ANALYSIS

Plaintiff argues that the ALJ erred in his assessment of two opinion letters, one provided by Dr. Abul Hasan, a VA primary care physician, and the other provided by Dr. Babatunde Ajibola, a family practitioner at Pavilion Family Medicine Center. Because the ALJ properly assessed these physicians' opinions under 20 C.F.R. § 404.1520c(c), and because substantial evidence supports the ALJ's decision to discount these physicians' opinions, the Commissioner's final decision is affirmed.

In their opinion letters, both Dr. Hasan and Dr. Ajibola indicated that Plaintiff's shoulder, knee, and foot pain would result in disabling functional limitations. Dr. Hasan (Ex. 19F) stated that Plaintiff would be off-task 25% of the time, would need to recline three to four times each day for at least 30 minutes, would be unable to sit for more than 4 hours in total during an 8-hour workday, and would be unable to stand/walk for more than 1 hour in total during an 8-hour workday. (R. 1055–56). Dr. Ajibola (Ex. 17F) indicated that Plaintiff would be off task 20% of the time, would likely miss four or more days of work each month, and was able to concentrate for only two hours at a time, but also that Plaintiff had no limitations in his ability to concentrate, persist, or maintain pace. (R. 1032–34).

The ALJ opted to discount the opinion letters from Dr. Hasan and Dr. Ajibola, and substantial evidence supports the ALJ's decision to do so. The ALJ expressly addressed both physicians' opinion letters in his order, and the ALJ properly touched on the issues listed in 20 C.F.R. § 404.1520c(c), particularly the issues of supportability[1] and consistency.[2]

---

[1] "Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1).

[2] "Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2).

Regarding internal supportability, Dr. Ajibola failed to reconcile the clear inconsistency between his finding, on the one hand, that Plaintiff's pain would limit his concentration, and his different finding, on the other hand, that Plaintiff had no limitation in his ability to concentrate, persist, or maintain pace. (R. 1032–33). Moreover, neither Dr. Hasan nor Dr. Ajibola offered a clear explanation for the source of Plaintiff's pain or a clear description of its estimated magnitude. Instead, both physicians simply provided a list of all of Plaintiff's impairments and concluded that Plaintiff suffered from a disabling degree of pain. (R. 1030, 1055). Dr. Hasan based his conclusion on treating Plaintiff "an average of two times per year" since 2017 (R. 1055), and Dr. Ajibola's contemporary treatment notes suggest that he was unable to view records from Plaintiff's treatment with other specialist physicians. *See* (R. 1231) ("we don't have med records"). The ALJ did not err by reasonably concluding that Dr. Hasan and Dr. Ajibola may have credited Plaintiff's self-report of disabling pain, without any ability to view medical files suggesting that Plaintiff was contemporaneously engaging in "cowboy ranching" activities. (R. 655). *See also* (R. 657) ("riding some horses and jumped off the wrong way"); (R. 659) ("trying to transport 27 horses from Texas into Georgia").

Regarding consistency with other medical evidence, the record indicates that Plaintiff's gastroenterological impairments were "stable" or "controlled" with medication (R. 532, 535, 547), and that Plaintiff's hypothyroidism and hypogonadism were similarly "mild" or "stable and nonprogressive" through treatment with Synthroid and Foresta. (R. 459, 728). The record indicates that Plaintiff reported markedly decreased shoulder pain following a January 2016 surgery involving a Mumford procedure and rotator cuff repair. (R. 315, 331). Thereafter, when Plaintiff reinjured his "R shoulder while falling while riding a horse" (R. 868), Plaintiff underwent another surgery in February 2019. (R. 789). In the months following that second surgery, Plaintiff similarly

reported little or no pain (R. 950) ("definite improvement"), and greatly improved functionality. (R. 964) ("I can use this arm to toss the ball around with my dog"). These records all support the ALJ's conclusion that Plaintiff's gastroenterological impairments, hypothyroidism and hypogonadism, and shoulder impairment did not result in disabling limitations.

A similar analysis applies to Plaintiff's lower extremity pain. While the record confirms that Plaintiff has venous reflux (R. 690), mild degeneration at the L5-S1 vertebral site (R. 1067), and moderate degeneration of the first metatarsophalangeal joint of the right foot (R. 1064), the record indicates that Plaintiff has managed these impairments with conservative forms of treatment including compression stocking, Epsom salt baths, strengthening and stretching exercises, and "anti-inflammatory [medication] only if needed." (R. 695). Plaintiff's treatment records from the Foot and Ankle Center of Middle GA consistently note signs of only "minimal" or "mild pain," "[m]uscle strength is normal," and no or only a slight antalgic gait. (R. 668, 1187). The ALJ did not err by crediting this long-term, specialized treatment evidence, and by discounting the contrary and unsupported findings of Dr. Hasan and Dr. Ajibola.

## **CONCLUSION**

For the reasons discussed herein, the Commissioner's decision denying Plaintiff D.L.R.'s application for disability benefits is **AFFIRMED**.

**SO ORDERED**, this 7th day of March, 2023.

s/ Charles H. Weigle_____
Charles H. Weigle
United States Magistrate Judge